# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ALBERT V. MEDLIN,

    Plaintiff,

v.

WALTER BURNS and SCOTT R. DONOVAN,

    Defendants.

CV 215-078

## ORDER

Plaintiff Albert Medlin ("Plaintiff") brings suit against both Walter Burns ("Burns"), his immediate supervisor, and Scott Donovan, the Division Chief ("Donovan")[1] (collectively, "Defendants"). The parties work at the Federal Law Enforcement Training Center ("FLETC"),[2] and they are employees of the federal government. Plaintiff brings three state law causes of action against Defendants for: (1) libel; (2) intentional infliction of

---

[1] Plaintiff originally filed a separate suit against Donovan, case number: 2:15 CV 123. On September 10, 2015, the United States Attorney's Office for the Southern District of Georgia filed an unopposed Motion to Consolidate Cases in Donovan's suit. Dkt. Nos. 7, 16. The Court granted this Motion at the February 19, 2016 Motion Hearing and closed the case. Dkt. No. 18. Given the consolidation in this case, the Clerk of Court is **DIRECTED** to transfer all pending motions from 2:15 CV 123 to the instant matter and resolve the pending Motions according to this Order.

[2] FLETC is an agency located within the United States Department of Homeland Security, located at 1131 Chapel Crossing Road, Glynco, Georgia 31520. Dkt. No. 1-1 ("Compl."), ¶ 2.

emotional distress; and (3) statutory violations. Compl., ¶¶ 21-49. Plaintiff seeks punitive and actual damages resulting from Defendants' alleged torts.

In response to Plaintiff's Complaint, the United States Attorney's Office for the Southern District of Georgia filed a Notice of Substitution (Dkt. No. 4) certifying that during the incident in question, both Defendants acted within the scope of their authority as supervisors at FLETC. Dkt. No. 4, pp. 1-2. Defendants then filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 10). On February 19, 2016, the Court held an evidentiary hearing on the substitution issue as well as the Motion to Dismiss. Donovan and Burns each testified at the hearing.

Now pending before the Court are the following two motions: (1) Defendants' Notice of Substitution (Dkt. No. 4); and (2) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 10). For the reasons set forth below, the Court **GRANTS** Defendants' Notice of Substitution (Dkt. No. 4) and **DENIES** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction at this time (Dkt. No. 10).

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint. Plaintiff is a senior Firearms Instructor in the Firearms Division ("FAD") at FLETC. Compl., ¶ 2. Burns is a branch

chief within the FAD at FLETC, and he is Plaintiff's immediate supervisor. Id. ¶¶ 4, 56. On June 6, 2014, Burns filed a written "Notice of Proposed Removal," suggesting the removal (termination) of Plaintiff from employment at FLETC. Id. ¶ 7. FAD Division Chief Donovan sustained Burns' removal proposal, terminating Plaintiff from employment at FLETC on August 29, 2014. Id. ¶ 8. Plaintiff filed a timely appeal of both decisions to the Merit Systems Protection Board ("MSPB"). Id. ¶ 9. The MSPB directed the parties to appear for an appeal hearing in February, 2015. Id. ¶ 10. Shortly after the hearing commenced on February 11, 2015, FLETC canceled Donovan's removal decision, and "the administrative judge adjourned the hearing *sine die*". Id. ¶ 11. Shortly thereafter, FLETC canceled both Burns' and Donovan's removal proposals on February 26, 2015. Id. ¶¶ 12-15.

Although FLETC cancelled the removal proposal regarding Plaintiff, Burns still sought to impose some form of discipline upon him. Id. ¶ 16. On March 25, 2015, Burns proposed to suspend Plaintiff without pay for a period of fourteen calendar days. Id. ¶ 17. Donovan upheld Burns' proposal on April 17, 2015, electing to extend Plaintiff's disciplinary period for an additional four days, suspending Plaintiff without pay for eighteen calendar days. Id. ¶ 18. FLETC attorney Elise Jones notified Plaintiff that although FLETC would uphold the

suspension proposal, the disciplinary period would encompass fourteen calendar days, not the eighteen days recommended by Donovan. Id. ¶ 19. FLETC allegedly reduced Plaintiff's suspension because "it unlawfully exceeded the disciplinary penalty proposed by [Burns'] suspension proposal." Id. ¶ 20.

## LEGAL STANDARDS

### I. Notice of Substitution

The Westfall Act, 28 U.S.C. § 2679(d), authorizes the Attorney General of the United States to certify that a federal employee acted within the scope of his employment with respect to conduct forming the basis for a tort claim against the employee.[3] After such certification, the United States is substituted for the defendant, and the case proceeds under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq. ("FTCA"). Seneca v. United S. & E. Tribes, 318 F. App'x 741, 744 (11th Cir. 2008) (per curiam) (citing Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 419-20 (1995)).

"[T]he Attorney General's certification is *prima facie* evidence that the employee acted within the scope of his employment." Id. (quoting Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996)). However, "upon objection by the plaintiff, the Attorney General's scope-of-employment certification is reviewable by the district court." Hendrix v. Snow, 170 F.

---

[3] The Attorney General delegated his certification authority to the United States Attorney. 28 U.S.C. § 510; 28 C.F.R. § 15.4.

App'x 68, 82 (11th Cir. 2006) (per curiam) (citing Lamagno, 515 U.S. at 436-37; S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir. 1990)). In such a case, "the district court . . . decide[s] the issue *de novo*." Seneca, 318 F. App'x at 744 (quoting Flohr, 84 F.3d at 390) (alterations in original); see also Lamagno, 515 U.S. at 434 ("[T]he Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee.").

**II. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal courts have limited jurisdiction. Ishler v. Internal Revenue, 237 F. App'x 394, 395 (11th Cir. 2007) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). The plaintiff bears the burden of establishing the court's subject matter jurisdiction. Id. (citation omitted).

A motion to dismiss brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge the court's subject matter jurisdiction based on the face of the pleadings or the substantive facts of the case. Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003). In a 12(b)(1) facial attack, the court evaluates whether the complaint, along with any attached exhibits, "sufficiently allege[s] a basis of subject matter jurisdiction" and employs standards similar to

those governing Fed. R. Civ. P. 12(b)(6). Hous. v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013). A factual attack, on the other hand, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

**DISCUSSION**

**I. Defendants' Notice of Substitution**

Plaintiff argues that the United States should not be substituted as a party-defendant in this case. Plaintiff sets forth two arguments in support of his Motion, arguing that Defendants knowingly and deliberately: (1) "filed false charges against an employee," which was not within the scope of their authority as supervisors, dkt. no. 6, p. 13; and (2) issued a "false, malicious, unprivileged disciplinary proposal that is libelous *per se*" and did not further the business of FLETC. Id. at p. 15. In response, the United States argues that Defendants both acted within the scope of their authority and in furtherance of FLETC business when they recommended the removal of Plaintiff, regardless of whether, as Plaintiff alleges, Defendants based their removal proposal on "false and allegedly defamatory" statements. Dkt. No. 9, pp. 4-9.

The plaintiff bears the burden of showing that the employee-in-question's conduct was outside the scope of his employment. Seneca, 318 F. App'x at 744 (quoting Flohr, 84 F.3d at 390). "[W]hether an employee's conduct was within the scope of his employment is governed by the law of the state where the incident occurred." Hendrix, 170 F. App'x at 82 (quoting Flohr, 84 F.3d at 390) (citations and internal quotation marks omitted). In this case, Georgia law controls. See Dkt. No. 3, ¶¶ 6-7, 43. Under Georgia law, "[e]very person shall be liable for torts committed by his . . . [employee] by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." O.C.G.A. § 51-2-2.

"Two elements must be present to render [an employer] liable under respondeat superior: first, the [employee's act] must be in furtherance of the [employer's] business; and, second, [the employee] must be acting within the scope of his [employer's] business." Piedmont Hosp., Inc. v. Palladino, 580 S.E.2d 215, 217 (Ga. 2003) (citations omitted) (alterations omitted). Thus, "if the employee was authorized to accomplish the purpose in pursuance of which the tort was committed, the employer is liable." Chorey, Taylor & Feil, P.C. v. Clark, 539 S.E.2d 139, 140 (Ga. 2000) (citing Franklin Life Ins. Co. v. Hill, 220 S.E.2d 707, 712 (Ga. Ct. App. 1975)). However, "if
7

[an employee] steps aside from his [employer's] business to do an act entirely disconnected from it, and injury to another results from the act, the [employee] may be liable, but the [employer] is not liable." Palladino, 580 S.E.2d at 217.

Both Burns and Donovan acted within the scope of their authority as Plaintiff's FAD Branch Chief and FAD Division Chief, respectively. As Branch Chief, Burns was Plaintiff's direct supervisor, and, in that role, he evaluated Plaintiff's work. Compl., ¶¶ 4, 56. In addition, Burns was responsible for proposing disciplinary action for the instructors under his supervision, should the need arise.[4] Dkt. No. 30-2, 34:1-25. Here, Burns received an evidentiary file from the Employee Labor Relations Branch regarding Plaintiff's conduct in an incident outside of work, and on the basis of the violations allegedly committed therein, he determined that Plaintiff required discipline. See generally Compl., pp. 16-20. As the basis for Plaintiff's removal proposal, Burns explained that Plaintiff's involvement in said incident constituted "conduct unbecoming a

---

[4] To recommend the discipline or termination of an employee, a supervisor working for the federal government must submit a proposal to the "deciding official," who then affirms or denies the proposal. Compl., p. 19. If the deciding official affirms the proposal, the terminated employee may appeal the decision through any one of the three following avenues: (1) filing "a grievance under the provisions of the negotiated agreement between the American Federation of Government Employees, Local 2002 and FLETC"; (2) appealing the action to the MSPB; or (3) initiating a discrimination complaint by contacting FLETC's Equal Employment Opportunity Division. Id. at p. 24.

federal employee" and recommended his removal to "promote the efficiency of the service." Id. at pp. 17, 19.

In conformity with FLETC policy, Burns forwarded his recommendation to Donovan, the FAD Division Chief, who, in addition to managing approximately one-hundred-forty firearm agents, was also tasked with reviewing disciplinary proposals from the eight FAD Branch Chiefs, which included Burns. Dkt. No. 29, 4:12-6:13. Donovan consented to Burns' removal proposal, initially agreeing with the proposal to remove Plaintiff and subsequently signing off on the proposal to suspend him without pay. Compl., ¶¶ 8, 18.[5]

Importantly, Plaintiff does not contend that Defendants were unauthorized to complete such removal proposals in the first place.[6] Rather, Plaintiff argues that in performing these supervisory duties, Defendants relied on "false charges" in recommending Plaintiff's discipline. Dkt. No. 6, p. 13. Specifically, Plaintiff maintains that Defendants' reliance on

---

[5] Donovan elected to extend Burns' proposal to suspend Plaintiff without pay from fourteen days to eighteen days. Compl. ¶ 18. FLETC permitted Plaintiff's suspension without pay, but only for fourteen days, the suspension originally recommended by Burns. Id. at ¶ 17.

[6] Given that both Burns and Donovan had the authority to recommend Plaintiff's removal, any reliance on Roberts v. Duco Dev., Inc., to support Plaintiff's position is misplaced. 494 S.E.2d 313, 315 (Ga. Ct. App. 1997). In Roberts, the supervisor, in *knowing violation* of his employer's policies, submitted an affidavit leveling two false charges of theft against plaintiff. Id. The Court in Roberts held that the supervisor exceeded his authority because the *act* of completing the affidavit—not *lying* in the affidavit—directly contravened the policies established by his employer. Id. This stands in marked contrast to the instant matter, in which Burns was authorized by FLETC to complete evaluations and recommend the removal of employees, such as Plaintiff.

false charges to support their disciplinary proposal renders their actions outside the scope of their employment and violates both "FLETC policy and related federal law that is binding upon FLETC." Id. at p. 13. But an allegation that Defendants relied on "false charges" in recommending the discipline of Plaintiff does not render Defendants' actions outside the scope of employment. In the present case, Burns and Donovan acted both within the scope of their authority and in furtherance of FLETC business. Even if, as Plaintiff alleges, there was some measure of personal animus motivating Defendants' actions, their conduct was nevertheless—and at least partially-motivated by a purpose to serve their employer. Accord Hendrix, 170 F. App'x at 83 (applying Georgia law and upholding the district court's finding that, even where supervisory employees acted maliciously, their personnel decisions were in furtherance of, and within the scope of, the employer's business).

Plaintiff maintains that Defendants did not act in furtherance of FLETC business when they relied on "malicious" and "defamatory" information in recommending Plaintiff's discipline. Dkt. No. 6, p. 17. For support, Plaintiff relies on Georgia case law standing for the proposition that an employee can, in certain situations, exceed the scope of his employer's authority by failing to act in a manner furthering his employer's business. See, e.g., Piedmont, 276 Ga. at 614;

AO 72A
(Rev. 8/82)

Lucas v. Hosp. Auth. of Dougherty Cnty., 388 S.E.2d 871, 874 (Ga. Ct. App. 1989). The Court notes, however, that in the instant matter, the justification that Defendants gave for Plaintiff's removal was completely within their authority as supervisors—they determined that Plaintiff failed to comport himself in a manner befitting a FLETC officer. Compl., pp. 17, 19.

However, the cases cited by Plaintiffs in which an employee's self-serving acts were found to exceed the scope of their authority stand in sharp contrast to the present case. In Piedmont, 580 S.E.2d at 218, the court found that an employee's act of performing oral sex on a patient did not further his employer's business and did not serve a purpose for the employer-hospital. Similarly in Lucas, 388 S.E.2d at 874, the court found that an employee's act of killing patients by administering lethal doses of potassium chloride did not serve a purpose for the employer-hospital.[7] In the present case, the decisions made by Burns and Donovan may not serve a purpose that Plaintiff agrees with, but the removal and suspension proposals were submitted within their authority as FLETC supervisors. Accord Hendrix, 170 F. App'x at 83. As such, Burns and Donovan

---

[7] Nor is Roberts, 494 S.E.2d at 315, helpful to the Plaintiff here. In Roberts, a fast food employee swore out false affidavits. Id. The employer had an established policy that employees were not to give out affidavits without express permission. Id. Not surprisingly, the Roberts court found that by utilizing a procedure specifically prohibited by the employer, the employee was not furthering his employer's business.

did not exceed the scope of their authority when they completed a removal proposal—which was fully within their authority as supervisors—even though they may have relied on allegedly "false charges" or "malicious" information in reaching their decision.

When a supervisor recommends the removal of an employee, the employee is likely to challenge that unfavorable action for a number of reasons, including that their supervisors relied on false information or that the information in the report was defamatory. But, case law is clear: the relevant inquiry is whether "the employee was authorized to accomplish the purpose in pursuance of which the tort was committed." Chorey, 529 S.E.2d at 140. Here, both Defendants were authorized to evaluate and propose the discipline of Plaintiff, regardless of whether or not some personal animus may have also motivated them to recommend Plaintiff's discipline. Accordingly, Defendants' Notice of Substitution is hereby **GRANTED**.

## II. Defendants' Motion to Dismiss

Defendants set forth two arguments in the Motion to Dismiss for lack of subject matter jurisdiction: (1) that Plaintiff's tort claims of libel and intentional infliction of emotional distress are barred by sovereign immunity; and (2) that Plaintiff's statutory violations fail as a matter of law because they are preempted by the Civil Service Reform Act. Dkt. No. 10, pp. 4-8. In response to Defendants' Motion, Plaintiff asked

the Court to dismiss the Motion as premature, given that the Court had yet to rule upon the Notice of Substitution. Dkt. No. 23, p. 4.

Plaintiff concedes that if he loses the substitution argument, his libel and intentional infliction of emotional distress claims are barred by sovereign immunity. Id. Plaintiff also withdrew his claims of statutory violations. Id. at pp. 6-7. Given that the Court is granting Defendants' Notice of Substitution, Defendants' Motion to Dismiss (Dkt. No. 10) is hereby **DENIED** at this time. Defendants are permitted to refile a Motion to Dismiss within ten days that takes into account the Court's grant of substitution.

### CONCLUSION

The United States is the proper defendant in this action. Accordingly, Defendants' Notice of Substitution (Dkt. No. 4) is hereby **GRANTED**. Defendants' Motion to Dismiss (Dkt. No. 10) is **DENIED AT THIS TIME** with permission to refile. The Clerk of the Court is hereby **DIRECTED** to substitute the United States as the proper Defendant in this case.

**SO ORDERED**, this 31ST day of March, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA